IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **JANELL M. LOBERG AND RUSS LOBERG,** | ) 8:09-CV-280 |
| **Plaintiffs,** | ) |
| vs. | ) **BRIEF IN SUPPORT OF** |
| | ) **PLAINTIFF'S MOTION FOR** |
| **CIGNA GROUP INSURANCE and LIFE INSURANCE COMPANY OF NORTH AMERICA,** | ) **SUMMARY JUDGMENT** |
| **Defendants.** | ) |

### INTRODUCTION/BACKGROUND

This Brief is submitted in support of Plaintiff's Motion for Summary Judgment filed in response to this Court's August 19, 2010 Order (Filing No. 33) directing the parties to file cross-motions for summary judgment. By Memorandum and Order (Filing No. 29) this Court allowed Plaintiffs leave to file an Amended Complaint (Filing No. 30) which was filed on May 17, 2010. Defendants' Answer to Amended Complaint (Filing No. 32) was filed on May 26, 2010. These are the operative pleadings.

Plaintiffs were granted leave to conduct limited discovery on the Defendants' affirmative defense of failure to exhaust administrative remedies through an appeal of the claim denial (Filing No. 29). However, Defendants subsequently withdrew this affirmative defense from the Answer to Amended Complaint (Filing No. 32) and no longer are asserting any defense that the Plaintiffs should be barred from recovery based upon their purported failure to exhaust their administrative appeal remedies.

The Court has noted that the underlying case herein arises out of Defendants' denial of Janell Loberg's claim for benefits under an employee welfare benefit plan governed by ERISA. (Filing No. 29, page 1). Plaintiffs understand the issue being submitted on cross motions for

1

summary judgment is whether the Defendant properly denied Plaintiffs' claim for accidental death benefits arising out of the death of their son Wade Loberg.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1. At all relevant times Plaintiff Janell M. Loberg was an employee of Valmont Industries, Inc. (hereinafter, "Valmont") (Amended Complaint ¶3, Fil. No. 30 ¶ , Fil. No. 26 ¶ 2).

2. Through her employment Janell Loberg was issued a policy of insurance with Defendant LINA, Group Accident Policy OK 807266 (the "Policy"), for accidental life insurance coverage for Eligible Persons and their dependents. (Fil. No. 26¶ 4).

3. On or about September 4, 2008 the Plaintiffs' son, Wade Loberg, died as a result injuries sustained in an automobile accident (the "Accident"). (Amended Complaint ¶ 7, AR p.16).

4. On October 3, 2008 Janell Loberg submitted a claim for accidental death benefits under the Policy. (Administrative Record ("AR") p. 53-54).

5. The Policy contains the following insurance clause:

> "THIS IS A LIMITED POLICY.
> READ IT CAREFULLY.
> THIS IS AN ACCIDENT POLICY WHICH DOES NOT PAY
> BENEFITS FOR LOSS FROM SICKNESS.
>
> *We agree to pay benefits for loss from bodily injuries:*
>     *a) caused by an accident which happens while an insured*
>        *is covered by this policy; and*
>     *b) which, directly and from no other cause, resulted in a*
>        *covered loss. (See the Description of Coverage.)*
> *We will not pay benefits if the loss was caused by:*
>     *a) sickness, disease or bodily infirmity; or*
>     *b) any Exclusions listed in the policy."*

(AR p. 3, 79).

6. The Policy does not specifically define the term "accident") (AR 81).

7. By letter dated December 5, 2008 (the "Denial Letter") an accident specialist/plan administrator ("Accident Specialist") employed by one or both of the Defendants notified Janell Loberg that her claim was being denied because Wade Loberg's death was not an accident according to the terms of the Policy (AR p. 3-6).

8. The Investigator's Motor Vehicle Accident Report prepared by Trooper Kevin Bruning relating to the Accident notes that the time of the Accident was "[u]nko" (AR at p. 9).

9. The Investigator's Motor Vehicle Accident Report prepared by Trooper Kevin Bruning relating to the Accident specifically notes that the "[i]nvestigator is unsure when the accident happened." (AR at p.10).

10. The Certificate of Death issued on Wade Loberg's death certifies that the immediate cause of his death was "[b]lunt trauma to the head, chest and abdomen" (AR at p. 58).

11. The Certificate of Death issued on Wade Loberg's death certifies that the time onset of death following the immediate cause of death was "[u]nknown" (AR at p. 58).

12. The Certificate of Death issued on Wade Loberg's death certifies that the condition leading to the immediate cause of his death was an "[a]utomobile accident" (AR at p. 58).

13. The Certificate of Death issued on Wade Loberg's death certifies that the time onset of death following the Accident was "[u]nknown" (AR at p. 58).

14. An autopsy of Wade Loberg was performed by J.W. Jones, M.D. on or about September 5, 2008.  (AR at pp.15-22).

15. The cause of Wade Loberg's death determined by Dr. Jones from the autopsy was "blunt trauma to the head, chest and abdomen, with multiple injuries. . . sustained as a result of a single motor vehicle accident. . ." (AR at p. 16).

16. A Forensic Toxicology Report was prepared which determined that a sample received on

September 5, 2008, had a blood ethanol level of 0.172 g/100mL (AR at p. 14).

17. The Forensic Toxicology Report, Autopsy Report and Administrative Record as a whole do not reflect when the blood specimen was recovered from Wade Loberg or whether the blood Ethanol Level noted in the Forensic Toxicology Report relates to a time when Wade Loberg was driving a motor vehicle. (AR14-21).

18. The Report of Alcohol and Drug Analysis for Nebraska Traffic Crashes relating to the Accident provides that the time of the Accident on September 4, 2008 was "[u]nknown" (AR at p 22).

19. There were no surviving witnesses to the Accident. (AR 9-11).

20. The administrative record is silent as to Wade Loberg's specific alcohol use at any point in time prior to or subsequent to the Accident. (AR).

21. The administrative record is silent as to any historical use of alcohol by Wade Loberg. (AR).

22. The administrative record is silent as to the effect, if any, alcohol may have had on Wade Loberg or upon his driving ability. (AR).

## STANDARD OF REVIEW

I.     **Rule 56**

Under Fed. R. Civ. P. 56, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and… the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## II.     ERISA

In evaluating questions of policy interpretation under ERISA, federal courts apply only federal common law. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110 (1989) (*"Bruch"*); *King v. Hartford Life and Acc. Ins. Co.,* 414 F.3d 994 (8th Cir. 2005) (*"King II"*). "A denial of benefits challenged under ERISA is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan" *Bruch,* 489 U.S. at 115. If an ERISA plan gives its administrator or trustees discretionary authority to determine eligibility for benefits, the court reviews such a decision for an abuse of discretion. *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 128 S. Ct. 2343, 2348 (quoting *Bruch,* supra).

This court determined in its Memorandum and Order (Filing No. 29) on the Plaintiffs' Motion to Amend the Complaint and the Plaintiffs' Motion for Leave to Conduct Full Discovery that the Policy is the governing plan document and that because the Policy grants the Defendants discretionary authority to interpret the Policy and make benefits determinations, the abuse of discretion standard applies. (Fil. No. 29, p. 4).

In determining whether a plan administrator abused its discretion in a decision on benefits, an appellate court reviews whether the decision was supported by both a reasonable interpretation of the plan, and substantial evidence in the materials considered by the administrator. See *King II*, at 999-1000; *Finley v. Special Agents Mut. Benefit Assoc., Inc.*, 957 F.2d 617, 621 (8th Cir. 1992); *Courtney v. Zurich American Insurance Company*, 2008 WL 189836 at p. 9-10 (D. Neb. Jan. 22, 2008) (citing *King II*). In conducting the second part of this review, ". . . the court must also ensure that an administrator's decision is supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate

5

to support the decision." *King II,* at 999; *Courtney*, 2008 WL 189836 at p. 9 (citing *King II*). "

The *King II* case notes that "[i]n sum, an administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator." *King II,* at 1000; *Courtney* at 10.

## ARGUMENTS

I.  **The Defendants' interpretation of the term "accident" in the Policy was not reasonable.**

In the case at hand, the Policy includes the following provision governing the coverage arising from accidents:

> "THIS IS A LIMITED POLICY.
> READ IT CAREFULLY.
> THIS IS AN ACCIDENT POLICY WHICH DOES NOT PAY
> BENEFITS FOR LOSS FROM SICKNESS.
>
> *We agree to pay benefits for loss from bodily injuries:*
> *a     caused by an accident which happens while an*
> *insured is covered by this policy; and*
> *b     which, directly and from no other cause, resulted in*
> *a covered loss.  (See the Description of Coverage.)*
> *We will not pay benefits if the loss was caused by:*
> *a     sickness, disease or bodily infirmity; or*
> *b     any Exclusions listed in the policy."*

(AR  3, 79).

The Policy itself does not contain a definition of the term accident.

The Denial Letter sent by the Defendants made a determination that the Plaintiffs' claim was denied because the death of Wade Loberg was not an accident according to the terms of the Policy. (AR p. 3-6). The Denial Letter states in pertinent part:

> As stated previously, Group Accidental Death Policy OK 807266 only pays benefits for loss that was caused by an accident. The Report of Alcohol and Drug Analysis for Nebraska Traffic Crashes documents that Wade Loberg was operating his vehicle with a blood alcohol level of 0.172%. Please note that the legal blood alcohol limit in the State of Nebraska is 0.08%.
>
> Mrs. Loberg, every state in the nation has criminalized drunk driving and has determined, through the imposition of criminal punishment for the offense, that the conduct must be deterred. The legislative purpose of drunken driving laws is to protect the public and guard against the threat of injury. All licensed motorists throughout the United States are on notice, by operation of law, of the state-declared prohibitions against drunk driving and its consequences.
>
> Therefore, **as Wade Loberg would have been aware of the risks involved in operating his vehicle while under the influence, his death was not an Accident** according to the terms of the Policy. Therefore, no accidental Death Benefits are payable under Policy OK 8072866."

(AR p. 4) (emphasis added).

An administrator's interpretation of uncertain terms in a plan will not be disturbed if reasonable. *King II,* 414 F.3d at 999 (quoting *Bruch,* 489 U.S. at 111). In determining whether an interpretation of an uncertain term by a plan administrator is reasonable, the Eighth Circuit set out factors to be considered referred to as the *Finley* factors, from *Finley v. Special Agents Mut. Benefit Assoc., Inc.,* 957 F.2d 617, 621 (8th Cir. 1992)  The *Finley* factors require a court to consider whether the plan administrator's interpretation is consistent with the goals of the Plan, whether the plan administrator's interpretation renders any language of the Plan meaningless or internally inconsistent, whether the plan administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether the plan administrator has interpreted the words at issue consistently, and whether the plan administrator's interpretation is contrary to the clear language of the Plan." *King II, supra.* at 999, quoting *Finley* at 621.

The Eighth Circuit has not adopted a definition for the term accident. However, in the *King II* case the court discussed both the standard set out by the 7th Circuit in *Cozzie v. Metro. Life Ins. Co.,* 140 F.3d 1104, (7th Cir. 1998) ("the *Cozzie* standard") and the standard set out by the 1st Circuit in *Wickman v. Northwestern National Insurance Co.,* 908 F.2d 1077, 1088 (1st Cir. 1990) ("the *Wickman* standard").

The *Cozzie* standard defines the term "accident" with a reasonably foreseeable standard. In *Cozzie,* the 7th Circuit accepted as reasonable an interpretation that excluded "reasonably foreseeable" injures form the scope of "accidental" injuries. *Cozzie, supra.*

The *Wickman* standard excludes from the scope of "accident" those cases in which "a reasonable person with a background and characteristics similar to the insured, would have viewed the injury *as highly likely to occur* as a result of the insured's intentional conduct" *Wickman* at 1088 (emphasis added).

In *King II* the plan participant was killed when the motorcycle he was operating veered off of a road and struck a fence. He was then ejected from the motorcycle and suffered fatal head injuries. *Id.* Blood tests taken after the accident showed that the plan participant was legally intoxicated at the time of the crash (with a blood-alcohol level of 0.19), and his death certificate listed "acute alcohol intoxication" as a significant condition contributing to death. *King II*, *supra.* In the *King II* case the defendant insurance company sent a claim denial letter informing the plan beneficiary that her claim for benefits was being denied because "a reasonable person would have known that death or serious injury was a *reasonably foreseeable* result of driving while intoxicated" and "[a] death is not accidental when it is a *foreseeable* result of the insured's voluntary act of becoming intoxicated" (emphasis added in both). The plan at issue in *King II* gave the plan administrator discretion and was therefore reviewed under an

8

abuse of discretion standard.

Therefore, initially, the plan administrator in *King II* defined the term "accident" with a reasonably foreseeable standard, the *Cozzie* standard. However, despite referencing the *Cozzie* standard in the claim denial letter, the defendants in the *King II* case relied on the *Wickman* standard in the subsequent litigation, arguing that it was the proper standard. As a result, the *King II* court remanded the case to the plan administrator, without reaching this issue of which was the proper standard, to make a decision using the *Wickman* standard since it was the *Wickman* standard that the defendant insurance company argued should have been applied.

While the Eighth Circuit declined to make a determination as to whether the *Cozzie* or the *Wickman* standard was the proper standard in *King II*, *supra.*, at least one decision of the Nebraska federal district court held that the *Wickman* standard is proper. *Courtney v. Zurich American Insurance Company*, 2008 WL 189836 (D. Neb. Jan. 22, 2008). This court was presented with a case that had very similar facts to those in *King II* and the case at hand and held that the *Wickman* "highly likely to occur" standard was proper.

In the *Courtney* case, a plan participant was involved in a motor vehicle collision which occurred while she was traveling eastbound down a street in the city of Alliance, Nebraska when her vehicle veered into the westbound lane, struck the left rear corner of a truck, continued east, and collided head-on with a semi in the westbound lane. *Id.* At the time of the collision, the plan participant was significantly intoxicated. *Id.* Blood tests taken within 24 hours of her death showed that she had a blood alcohol content level of 0.5% *Id.* The death certificate of the driver in the *Courtney* case stated that her immediate cause of death was "multiple blunt force injuries" .*Id.* The plan administrator was given discretion in the plan at issue in *Courtney* and it too was reviewed under an abuse of discretion standard.

In the *Courtney* decision the district court discussed both the *Cozzie* standard and the *Wickman* standard and concluded, "The court has carefully reviewed the decisions in Cozzie, King II, Finley, Wickman, and Carter Lake v. Aetna Cas. & Sur. Co., 604 F.2d 1052 (8th Cir. 1979) and finds that the federal common law definition of "accident" is that applied in Wickman: "An injury that the victim reasonably expected to escape or (where the victim's subjective expectations cannot be determined) an injury that a reasonable person with background and characteristics similar to those of the victim would not have considered highly likely."*Courtney* at 13-14 (quoting *Wickman, supra.* at 1088-1089).

In the case at hand, the administrative record does not set forth Nebraska's driving under the influence statutes, or those of any other state, nor does it set forth the legislative history and purpose behind the driving under the influence statutes in Nebraska or any other state. The Accident Specialist assigned to this claim set forth in the Denial Letter his determination that the act of drunk driving has been criminalized in every state and that there is imposed a criminal punishment for the crime of driving under the influence. (AR p 4). The Accident Specialist then concludes that Wade Loberg would have been aware of the risks involved in operating a motor vehicle.

From the discussion set forth in the Denial Letter it could easily be concluded that the risks involved in driving a motor vehicle under the influence would be the imposition of criminal punishment. (AR p. 4). As articulated by the Accident Specialist in the Denial Letter, states have concluded that driving under the influence is an act that should be punished with criminal penalties. This concept of punishing a driver who drives while under the influence naturally and logically assumes that those drivers will be alive when they are apprehended for the offense. There would be no logical reason to formulate a statutory scheme to impose criminal punishment

for driving under the influence upon persons who are deceased. The establishment of criminal punishment for the crime of driving under the influence assumes that human beings do not all die when they get behind the wheel of a vehicle while they are under the influence of alcohol. The Accident Specialist's conclusion that these statutes and legislation is in place to warn people that they will die if they drive a motor vehicle while under the influence is illogical and does not naturally flow from the enactment of this type of legislation. A more reasonable conclusion is that Wade Loberg would have been aware of the possible consequences of driving a motor vehicle under the influence of alcohol; namely that he could be criminally punished.

Additionally, under the same rationale, an accident happening upon driving a vehicle in excess of the posted speed limit, failing to use a turn signal, or failing to abide by any of the numerous other traffic statutes enacted for purposes of safety, would all disqualify the beneficiary from receiving benefits under the Policy. This interpretation of the term accident is in and of itself unreasonable.

In applying the *Finley* factors to the facts presented by the Policy and Denial Letter in the case at hand, it becomes clear that the Defendants' determination to deny benefits to Plaintiffs is based upon an unreasonable interpretation of the term accident in the Policy.

The Accident Specialist's interpretation of the term accident is not consistent with the goals of the Plan or Policy which are clearly to pay benefits for loss from bodily injuries to plan participants or their beneficiaries. (AR79).

The interpretation of the Policy term in the case at hand further makes the term accident meaningless when applied to motor vehicle accidents which are caused, at least in part, by activities of the beneficiary or plan participant which would violate criminal traffic laws. As set forth above, any violation of the rules of the road implemented by a state for safety in driving

11

would disqualify a person from receiving benefits under the Policy under the broad accident discussion and rationale set forth in the Denial Letter.

Plaintiffs submit that the interpretation of the term accident by the Defendants and their Accident Specialist to deny coverage under the Policy to anyone who has violated a criminal statute is inconsistent with the Policy and purposes behind the Policy.  It is noted that the Policy does provide for an exclusion of coverage and benefits in situations where the Insured is injured as a result of the commission of a felony.  (AR p. 81).  It is reasonable to conclude that if the Defendants had wanted to exclude coverage for the violation of the crime of driving under the influence, they could have set out that exclusion in the Policy itself, just as they had done for the commission of a felony.  The rationale advanced by Defendants through the Accident Specialist and set out in the Denial Letter that Wade Loberg's death was not an accident because of his purported violation of the criminal drunk driving statute is inconsistent with the plain language of the Policy which only excludes coverage for Insureds injured as a result of the commission of a felony.

In the case at hand, the Accident Specialist has excluded from the definition of accident any situation that resulted in serious injury or death where the person involved was engaging in behavior prohibited by a state statute (which was not a felony), of which the legislative purpose is to protect the public and guard against the threat of injury. This interpretation and definition of the term "accident" is not reasonable.  In defining the term "accident" in this way the Accident Specialist clearly abused his discretion.

Given that the Nebraska district court in *Courtney* has already been presented with a very similar fact situation as the one involved in this case and in that case made the determination that the *Wickman* standard is the proper standard to apply in defining the term accident, Plaintiffs

12

submit that the *Wickman* standard should be applied to the case at hand. In doing so, it is clear that the Accident Specialist's interpretation of accident was unreasonable and that he abused his discretion in denying benefits to Plaintiffs.

**II.    The Plan Administrator's decision was not supported by substantial evidence.**

In reviewing the denial of benefits decision, not only must the court make a determination that the interpretation of uncertain terms was reasonable when reviewing for an abuse of discretion, the court must also ensure that an administrator's decisions is supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *King II*, citing *Donaho v. FMC Consol. Edison Co. v. NLRB,* 74 F.3d 894, 900 & n. 10 (8th Cir. 1996). An administrator with discretion under a benefit plan has a duty to articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator. *Id.*

In this case the *Wickman* standard would require an analysis of whether a reasonable person *with background and characteristics similar to those of Wade Loberg* would have considered death to be a highly likely consequence of his actions.

There is no evidence in the Administrative Record as to whether or not Wade Loberg was a heavy or frequent drinker. There is no evidence as to how long of a period of time he was drinking, when he was drinking, his experience with drinking and potential tolerance, details regarding his experience driving the particular roadway that he was driving on, the conditions of his vehicle (whether it had bald tires, etc.), the speed at which he was driving, or his experience in driving. He may very well have driven the same roadway having had a blood alcohol level over the legal limit numerous times and made it home safely numerous times in the past. He also

13

may have had a tolerance built up to alcohol which would have decreased the severity of his impairment while driving and would have in turn decreased the risks associated with driving while over the legal limit. However, again, there is no evidence in the record to provide any guidance to the Accident Specialist one way or the other.

As set forth in the statement of facts above, the only references to a blood alcohol content for Wade Loberg are set forth in the Forensic Toxicology Report and the Report of Alcohol and Drug Analysis for Nebraska Traffic Crashes (AR p14, 22). The Forensic Report involved a sample received on September 5, 2008, which had a blood ethanol level of 0.172 g/100mL (AR at p. 14). There is no indication of whether that is indicative of the amount of alcohol in Wade Loberg's body at the time of the Accident. Further, as set forth in the Investigator's accident report, the Toxicology Report, the Certificate of Death, the Report of Alcohol and Drug Analysis and the autopsy, there is no definitive time determined as to when the Accident occurred nor is there any link whatsoever between the time the blood specimen was taken and the unknown time of the Accident.

Therefore, not only is the conclusion set forth in the Denial Letter with regard to Wade Loberg's driving under the influence at the actual time of the Accident unsupported by the record, the factual assertion that that fact was determined by the Report of Alcohol and Drug Analysis as set forth in the Denial Letter is objectively wrong. Specifically, the Report of Alcohol and Drug Analysis for Nebraska Traffic Crashes does not document that Wade Loberg was operating his motor vehicle with a blood alcohol content of 0.172 as set forth in the Denial Letter. (AR 4, 22). That report specifically notes that the time of the crash is unknown and does not make any conclusions as to timing of the alcohol specimen. (AR22).

This administrative record is devoid of any information which would support the specific

conclusions set forth by the Accident Specialist with regard to the injuries sustained by Wade Loberg not being the result of an accident.

In the *Courtney* case the court applied the *Wickman* standard and denied the defendant insurance company's motion for summary judgment determining that the administrator's decision to deny benefits was not supported by substantial evidence as it appeared that the defendant had denied coverage **solely on the basis of the decedent's admittedly high blood alcohol content.** In the same way there is a complete lack of evidence in the Administrative Record regarding Wade Loberg's background and characteristics.

Moreover, there is no statistical evidence in the record as to the likelihood of death in correlation to driving with a blood alcohol level over the legal limit. The only statistical evidence in the Administrative Record is within a News Release Article printed from the Nebraska State Patrol stating that "NOHS statistics show Nebraska teens are involved in 25% of all single vehicle rollover crashes". (AR p. 41). This would suggest that teens are statistically prone to accidents regardless of alcohol consumption. Moreover, the statistical evidence considered in the *King II* litigation showed that drunk driving deaths constitute less than one percent of the number of people arrested for drunk driving. *Courtney,* 414 F.3d at 988.

The Administrative Record lacks any evidence as to Wade Loberg's background and characteristics such as his drinking habits and the tolerance that he may have built up as a result of his drinking habits. Instead of analyzing these factors as required by the *Wickman* standard, the denial was based exclusively on the arbitrary and unsupported conclusion that Wade Loberg was operating a motor vehicle under the influence at the time of the Accident 's because a blood specimen a day after the Accident showed a level of .172%. Moreover, there is no statistical evidence in the record to reveal the likelihood of death when driving over the legal limit in

15

Nebraska, just a broad statement that all states in the United States have laws that criminalize drunk driving.  Without some statistical evidence or some evidence supporting a high probability of death when driving with a blood alcohol level over the legal limit, there is nothing to even link Wade Loberg's blood alcohol level to a "highly likely" result of death.

A review of the administrative record reveals that there is simply no substantial evidence that Wade Loberg's injuries were the result of him driving under the influence of alcohol and, even if the term accident were defined to exclude such instances, the record does support that conclusion.  The Accident Specialist abused his discretion in denying benefits to the Plaintiffs under the Policy.

## III. The Summary Plan Description was not written in a manner calculated to be understood by the average plan participant.

The Plaintiffs' submitted an Amended Complaint setting out the allegation that the plan summary was not written in a manner calculated to be understood by the average plan participant. (Fil. No. 30).Section 29 U.S.C. § 1022(a) which governs the Summary Plan Description sets out:

> (a) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b)of this title. The summary plan description shall include the information described in subsection (b) of this section, **shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.** A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section1024(b)(1) of this title.

Nowhere in the Summary Plan Description (Fil. No. 26, Exhibit 2) (SPD) is there mention of any exclusions or disqualifications for coverage based on violation of a state statute. There is also no mention of an alcohol intoxication exclusion.

The Accident Specialist informed the Plaintiffs that the claim was denied due to the fact that Wade Loberg was engaging in conduct that had risks of which he should have been on notice of due the prohibition of that behavior by state statute. Therefore, as this was a limitation or a modification to a right that the Plaintiffs had under the plan, the Plaintiffs should have been apprised of this contingency of coverage in the Summary Plan Description.

In this way the Summary Plan Description, as written, does not apprise the Plaintiffs of their rights and obligations under the plan as required by 29 U.S.C. § 1022(a). Moreover, the Code provision sets out that the SPD must be written in a manner calculated to be understood by the average plan participant. There is no wording contained in the SPD to suggest, hint at, or apprise the average plan participant that coverage would be denied in the event that a death occurs while a plan participant is in violation of a state statute or while driving under the influence of alcohol or that the term accident would not include either of those events.

Clearly the Defendants in this case have attempted to narrow the definition of accident to the point that there would be many situations in which a plan participant would expect to be covered based on the plain language of the plan and plan summary but would be excluded. This is a violation of the requirement set out in 29 U.S.C. § 1022(a).

## CONCLUSION

The Defendants clearly abused their discretion in denying benefits in this case based on an interpretation of the term "accidental" that was clearly unreasonable and not in line with the standard previously applied by this court and the standards set out by the Eighth Circuit. The

Defendants additionally abused their discretion in making a determination without substantial evidence and without stating adequate reasons for the denial.  Finally, the Defendants violated the requirement that a Summary Plan Description be written in a manner to apprise a plan participant of their rights under the plan.  For all of the above reasons, the Plaintiffs request that summary judgment be granted in their favor on all of the claims made by the Plaintiffs against the Defendants.

     Dated this 24th day of September, 2010.

                                            Janell Loberg and Russ Loberg, Plaintiffs

                             By    __s/Daniel P. Bracht_____
                                          Daniel P. Bracht, # 19501
                                          Law Offices of Daniel P. Bracht, P.C. L.L.O.
                                          127 East Walnut Street
                                          P.O. Box 252
                                          West Point, NE  68788
                                          (402) 372-5500
                                          ATTORNEY FOR THE PLAINTIFFS

## **CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that on September 24, 2010 I electronically filed the foregoing Brief in Support of Plaintiff's Motion for Summary Judgment with the Clerk of the Court using CM/ECF system which sent notification of such filing to the Defendants attorney of record Bryan S. Hatch, Stinson Morrison Hecker, L.L.P.

                                              _s/Daniel P. Bracht_____