IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **JANELL M. LOBERG AND RUSS LOBERG,** | ) | 8:09-CV-280 |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **PLAINTIFFS' BRIEF IN** |
| | ) | **OPPOSITION TO THE** |
| **CIGNA GROUP INSURANCE and LIFE** | ) | **DEFENDANTS' MOTION FOR** |
| **INSURANCE COMPANY OF NORTH** | ) | **SUMMARY JUDGMENT** |
| **AMERICA,** | ) | |
| **Defendants.** | ) | |

## INTRODUCTION/BACKGROUND

This brief is submitted pursuant to this Court's August 19, 2010 Order (Filing No. 33) and in response to Defendant's Brief in Support of the Defendants' Motion for Summary Judgment ("Defendants' Brief").

## STATEMENT OF UNDISPUTED MATERIAL FACTS

At this time, Plaintiffs accept generally the factual statements, as opposed to unfounded conclusions, contained in paragraph numbers 1, 2, 3, 4, 5, 6, 8, 10, 11, and 13 of the Statement of Uncontroverted Material Facts in Defendants' Brief. Plaintiffs generally dispute the facts set forth in the remaining paragraphs 7, 9 and 12 for the reasons set forth in their Brief in Support of Motion for Summary Judgment and for the following reasons. Plaintiffs dispute paragraph 7 because these conclusions reached by the officers investigating the scene of the accident are not corroborated by any eyewitness accounts and may or may not be proven facts. Plaintiffs dispute the facts in paragraph 9 because the reports referenced therein do not depict any link between the blood alcohol level referenced and the time of the collision. Plaintiff s dispute the allegations in paragraph 12 because the wording of the December 5, 2008 letter (the "Denial Letter" does not reflect clearly that the denial was because Wade's death was not the result of an accident.

1

## STANDARD OF REVIEW

The Defendants do not appear to dispute the Plaintiffs' contention that this court must utilize the Wickman standard in evaluating a determination of whether an accident has occurred. See *King v. Hartford Life and Acc. Ins. Co.,* 414 F.3d 994 (8th Cir. 2005) (*"King II"*); *Wickman v. Northwestern National Insurance Co.,* 908 F.2d 1077, 1088 (1st Cir. 1990).

## ARGUMENTS

I.  **The Defendants' utilize two entirely different interpretations of the term "Accident" in the claim denial letter and in their Brief in Support of the Motion for Summary Judgment.**

The Defendants argue in their Brief in Support of Defendants' Motion for Summary Judgment ("Defendants' Brief") that "LINA's interpretation of "accident" as a not expected event was reasonable and should be upheld." (Defendants' Brief, p.6).  However, <u>nowhere in the claim Denial Letter is the term accident interpreted to mean a "not expected event"</u>.  (AR, p.3-6).  The words "not expected event" do not even appear in the Denial Letter.  (AR, p.3-6).  In fact, even the word "expected" is absent in the claim denial letter.  (AR, p.3-6).  At this point in the litigation it is not appropriate to try to interpret the term "accident" in a manner that is inconsistent with the interpretation included in the claim Denial Letter.

The Denial Letter contains no analysis explaining whether Wade Loberg's death was a not expected event and it does not even expressly state that the accident was expected. Defendants cannot expect to have their interpretation of the term "accident" upheld because of its reasonableness when the interpretation advanced in Defendants' Brief differs drastically from the interpretation provided in the Denial Letter.  Therefore, the Plaintiffs' submit that any argument based on the "not expected event" interpretation should be disregarded by this Court in analyzing

2

merits of the parties' respective claims for summary judgment.

The actual reason for denial advanced by the Defendants in the Denial Letter focused exclusively on the criminalization of drunk driving, and not on expected versus not expected outcomes of driving with a BAC level in excess of the allowable limit by any particular state, as noted by the following excerpt from the Denial Letter:

> As stated previously, Group Accidental Death Policy OK 807266 only pays benefits for loss that was caused by an accident. The Report of Alcohol and Drug Analysis for Nebraska Traffic Crashes documents that Wade Loberg was operating his vehicle with a blood alcohol level of 0.172%. Please note that the Legal blood alcohol limit in the State of Nebraska is 0.08%.
>
> Mrs. Loberg, every state in the nation has criminalized drunk driving and has determined, through the imposition of criminal punishment for the offense, that the conduct must be deterred. The legislative purpose of drunken driving laws is to protect the public and guard against the threat of injury. All licensed motorists throughout the United States are on notice, by operation of law, of the state-declared prohibitions against drunk driving and its consequences.
>
> Therefore, as Wade Loberg would have been aware of the risks involved in operating his vehicle while under the influence, his death was not an Accident according to the terms of the Policy. Therefore, no Accidental Death Benefits are payable under Policy OK 807266.

(AR, p. 4).

Any argument by Defendants that their denial was based on an expected or not expected event analysis is not borne out by the actual words used in the Denial Letter or the Administrative Record as a whole and should be disregarded by this Court.

In *King v. Hartford Life and Acc. Ins. Co.,* the Eighth Circuit expressly set out that any claim denial **must set forth the plan's rationale at the time of the denial and that claims cannot be "sandbagged by after-the-fact plan interpretations devised for purposes of**

**litigation."**  414 F.3d 994, 999-100 (8th Cir. 2005) (emphasis added) (quoting *Marolt v. Alliant Techsystems, Inc.,* 146 F.3d 617, 620 (8th Cir. 1998)).  In following with these instructions set out in *King II,* the Defendants should be prohibited from asserting this new interpretation of the term "Accident" in their Defendants' Brief for the Court's consideration because it was not used or advanced in the Denial Letter and the Defendants' attempt at doing so should be viewed as a further attempt to 'sandbag' the Plaintiffs in this matter.

**II.  Applying the *Wickman* framework, the Defendants' motion for summary judgment should fail.**

The Defendants urge the Court to apply the test set out in *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir. 1990) , stating in their Brief, "This court, therefore, should follow King's instructions and apply the *Wickman* test…" (Defendants' Brief, at p. 9).  As argued in the Plaintiffs' Brief, we too urge this court to utilize the *Wickman* standard. (Fil. No.  37, p. 12-13).

While the Defendants argue that *Wickman* is the correct standard, they fail to show how this standard was satisfied by the analysis contained in the claim denial letter.  The *Wickman* framework requires an analysis as to whether the insured subjectively expected his actions to result in injury or death, and if the insured did not expect an injury, whether the suppositions which underlie that expectation were reasonable from the perspective of the insured.  *Wickman, supra.,* at 1088.  However, if the insured's actual expectation cannot accurately be determined because the evidence is insufficient to accurately determine the insured's subjective expectation, the fact-finder should then engage in an objective analysis of the insured's expectations.  *Wickman, supra.* at 1088.  This objective analysis requires the fact-finder to "ask whether a reasonable person, with background and characteristics similar to the insured, would have

viewed the injury as highly likely to occur as a result of the insured's intentional conduct" *Wickman, supra.,* at 1088 (citing *City of Carter Lake v. Aetna Cas. And Sur. Co.,* 604 F.2d 1052, 1058-59 & n.4 (8th Cir. 1979)).  The Defendants in no way satisfied this test in the claim denial letter as there was <u>no evidence cited analyzing the background and characteristics of Wade Loberg.</u>  Instead of pointing to something in the claim denial letter showing that the *Wickman* test has been satisfied, the Defendants offer the flat statement that "LINA's decision was not an abuse of discretion because Wade Loberg (or a person with knowledge and experiences similar to him) could not reasonably expect to avoid injury while driving with a BAC of more than two times the legal limit."(Defendants' Brief, p. 11).  This simple statement is an incorrect and incomplete analysis under the *Wickman* standard.

   The Defendants cannot argue on appeal that they included an analysis of the background and characteristics of Wade Loberg by simply making this bold assertion, without citing to any portion of the Administrative Record which supports that they actually analyzed the background and characteristics of Wade Loberg.  The Plaintiffs suggest that the reason the Defendants were unable to provide evidence of the consideration of the background and characteristics of Wade Loberg is because it is simply absent from the Administrative Record.  The Administrative Record contains no witness statements, no interviews of the individuals that Wade Loberg was with that night of his death, no investigation into Wade Lobergs drinking history or tolerance, and while the Autopsy (AR, p. 15) includes a notation that Wade Loberg's weight was 260 lbs there was no mention of his weight or build in the summary of evidence in the claim denial letter.  The claim denial letter states that the following documents were reviewed in making the determination:  the Proof of Loss Claim Form for Accidental Death benefits, the State of Nebraska Certificate of Death, the State of Nebraska Investigator's Motor Vehicle Accident

Report, the Report of Alcohol and Drug Analysis for Nebraska Traffic Crashes, and the Group Accidental Death Policy OK 807266.

Further, the documents listed as those reviewed and all the documents contained in the Administrative Record, provide very little insight, if any, into the background and characteristics of Wade Loberg. The accident report contained in the administrative record is a mere two (2) pages long and contains basic location and vehicle ownership information, a half-page diagram, and a six-sentence 'Description of Accident' based on Officer's Investigation'. (AR, p. 9-10). The Officer's report by Officer Mark Delmont is under a half of a page and includes very little analysis or details of the accident. (AR, p.13). Officer Mark Delmont's report states "Details of the accident are available from the Nebraska State Patrol", yet there is no other report in the Administrative Record, outside of the two-page accident report, giving any other details of the accident. (AR, p.13). Officer Mark Delmont's report also states that a Trooper Lackas assisted the Trooper Bruning in completing the accident investigation, yet there is no report from Trooper Lackas in the Administrative Record. (AR, p.13). Further, the bottom right-hand corner of the accident report states that pictures were taken, yet no pictures accompany the report. (AR, p. 11).

The Plaintiffs suggest that there was no investigation into Wade Loberg's background and characteristics because the claim was denied based on a per se rule or a categorical exclusion in which Defendants decided to deny claims which involve a death where the decedent had a blood alcohol level over the legal limit. This appears to be borne out by the actual words used in the Denial Letter. Given that such a categorical exclusion was utilized, there would have been no need for the Accident Specialist to make such an investigation into the background and characteristics of Wade Loberg.

6

The same situation arose in a case decided by the United States District Court in Connecticut in a case very similar to this case, where notably the defendant was the same insurance company as the Defendants in our case. *Danouvong v. Life Insurance Company of North America,* 659 F. Supp.2d 318 (Conn. 2009).  In *Danouvong* the court suggests, "Perhaps as a result of its deployment of a categorical rule, LINA failed to consider the facts and circumstances of Mr. Danouvong's collision and death in concluding that his death was not "unforeseeable". *Id.* at 14.  In *Danouvong,* the court was not utilizing the *Wickman* framework but was instead applying a reasonable person standard.  However, regardless of the standard applied, the defendant insurance company in *Danouvong* was found to have based their denial of benefits solely on the BAC of the deceased, as occurred in this case.  In utilizing a per se rule and denying the claim based on this categorical exclusion in this manner, the Defendants clearly did not satisfy the standard that they and the Plaintiffs urge the court to apply in this case and when viewed under the *Wickman* framework, the claim denial is clearly an abuse of discretion.  A "record [that]…shows a complete absence of *consideration* of [relevant] circumstances…can not pass muster even under the deferential arbitrary and capricious standard of review."  *Danouvong* at p.15, quoting *Demirovic v. Bldg. Serv. 32 B-J Pension Fund,* 467 F.3d 208, 216 (2nd Cir. 2006) (emphasis in original).

**III.   It was an abuse of discretion for the Defendants to use a per se rule in denying the Plaintiffs' claim for benefits in this case.**

As argued in the Plaintiffs' Brief in Support of Motion for Summary Judgment the Defendants denied this claim based on an arbitrary and unsupported conclusion that Wade Loberg was operating a motor vehicle under the influence at the time of the Accident. (Filing No. 37, p. 15).  Denying the claim on this basis was an abuse of discretion because it amounts to

a denial based on a per se rule that all accidents that occur while the motorist is under the influence of alcohol are regarded as non-accidents and should be denied coverage. Effectively, in applying this rule the Defendants are implementing an exclusion into their policy that is not contained in the language of the policy.

The Defendants repeatedly cite to the case *Eckelberry v. Reliastar Life Ins. Co.*, 469 F.3d 340 (4th Cir. 2006) in their Brief. (Defendants' Brief, p.7, 8, 10, 11,13). While the Defendants maintain that this case lends support for their position, this case specifically sets out:

> Although some courts have suggested that car crashes caused by drunk driving can never be accidents, *see, e.g.,Mullaney*, 103 F.Supp.2d at 495, we cannot anticipate every future set of circumstances and **do not adopt a per se rule**. Rather, it is well settled that <u>a plan fiduciary must assess all of the facts and circumstances attending a claim, afford the insured adequate opportunity to address the causes and circumstances surrounding any occurrence, and make a reasoned, principled assessment supported by substantial evidence</u>. *See, e. g., Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir.1997) (citing *Bernstein v. Capital-Care, Inc.*, 70 F.3d 783, 788 (4th Cir.1995).

*Id.* at 347. (emphasis added).

Not only does the case relied upon by the Defendants clearly reject the adoption of a per se rule which would exclude from the definition of accident all motor vehicle accidents that occur while a driver is under the influence, several other circuits reject a per se rule as well. Specifically, in *Stamp v. Metro.LifeIns.Co.,* 531 F.3d 84, (1st Cir. 2008) the First Circuit states, "The *Wickman* analysis does not require a categorical determination that all alcohol-related deaths are per se accidental or nonaccidental. Rather it leads us to consider the circumstances of the fatal event in question." *Id.* at 91 & n. 9. The Sixth Circuit notes in *Lennon v. Metropolitan Life,* 504 F.3d 617 (6th Cir. 2007) that the "extent of the risk" a drunk driver takes will "vary from case to case, depending on how intoxicated the driver is, how far he drives, how fast he

8

drives, and how many other drivers and pedestrians are sharing the road with him."*Id.* at 621 (*quoting United States v. Rutherford,* 54 F.3d 370, 376 (7th Cir. 1995)). The Seventh Circuit affirmed a denial of AD&D benefits where the insured died while driving drunk in *Cozzie v. Metro. Life Ins. Co.,* 140 F.3d 1104, (7th Cir. 1998) but expressly rejected an adoption of a per se rule stating, "We do not mean to suggest that MetLife could sustain a determination that all deaths that are causally related to the ingestion of alcohol, even in violation of law, could reasonably be construed as not accidental. States obviously have the authority to proscribe conduct that, although not inherently dangerous, is sufficiently risky that the general security is enhanced by its proscription. The plan fiduciary cannot interpret the plan in such a way as to make the coverage meaningless."*Id.* at 1110. Further, the Tenth Circuit addressed the appropriateness of applying a per se rule in these types of cases in their recent decision of *LaAsmar v. Phelps Dodge Corp.,* 605 F.3d 789 (10th Cir. 2010). In that case, when discussing the application of a per se rule the court stated, "As a starting point, the LaAsmars argue that MetLife erred by denying their AD&D claim based upon a blanket rule that all wrecks occurring while the driver has a BAC of approximately 2.8 times the legal limit is not an "accident." Courts have consistently rejected such a per se rule, as would we." *LaAsmar,* at 802. Again, in *Danouvong, supra.,* the U.S. District Court for the District of Connecticut held that a plan administrator's denial of benefits was arbitrary and capricious because the administrator in effect applied a per se rule treating all drunk driving deaths as non-accidental. *Danouvong,* at 326-327.

      As stated in *LaAsmar, supra.*, courts have consistently rejected such a per se rule and this court should follow their lead in rejecting the Defendants' position which effectively amounts to the application of a per se rule in this case.

IV. **The Defendants attempt to conduct the necessary analysis required by *Wickman* after-the-fact.**

The Defendants state in their Brief that it was unreasonable for anyone to think that he would not be injured while driving with a BAC of more than two times the legal limit. (Defendants' Brief, p. 11). The Defendants go on to suggest that the proper analysis was conducted under *Wickman* because assuming that Wade Loberg did not expect to harm himself or that it is impossible to determine what his expectations were, the inquiry then becomes whether, objectively speaking, an expectation of non-injury was reasonable and that it was patently unreasonable for anyone to think that he would not be injured driving with a BAC of more than two times the legal limit. However, as argued above, clearly absent from these blanket statement is any showing of evidence considered by the Accident Specialist which would reveal some consideration of the background and characteristics of Wade Loberg or the facts and circumstances surrounding the motor vehicle accident.

Moreover, while the Defendants urge this court to take into consideration Wade Loberg's BAC the court should not do so because, as argued in the Plaintiffs' Brief, there is nothing in the Administrative Record which proves at what level Wade's BAC was *while he was driving*.

Even if it were appropriate to consider the Defendant's specific BAC as the basis for denial, which the Plaintiffs' strongly suggest is not the case, the *Wickman* standard requires more.

Further, while the claim denial letter contains a "Summary of Evidence" (AR, p.4) the denial in the letter does not *rely* on any facts in the Administrative Record aside from the assertion by the Accident Specialist that Wade Loberg was over the legal limit and therefore

10

"under the influence" under the State's criminal statutes. The same issue arose in *Danouvong*, *supra.* In *Danouvong* the court stated "Instead, asserting that driving while intoxicated is risky, the letter presupposes that all car collisions involving excessive alcohol are foreseeable. **This is a categorical rule: the logic of the denial letters, if uniformly applied, requires LINA, in all cases and without regard to the individual facts in the record, to deny benefits to any insured driver who, having consumed alcohol in excess of the legal limit, is injured or killed in a car collision**." *Id.* at 13 (emphasis added). The court in *Danouvong* goes on to state, "even viewed in the light most favorable to LINA, its denial letters provide no basis on which to conclude that it considered the record as a basis for its denial in this case and that it determined, *in light of the facts and circumstances involved*, that Mr. Danouvong's car collision and resulting death were foreseeable beyond the fact of his serious intoxication." *Id.* at 14. In the same way, this court should find that the *same* Defendants in this case, who denied the claim in the *same* way, failed to consider the facts and circumstances of the collision outside of Wade Loberg's purported BAC at the time of the accident.

Furthermore, the blanket assertion set out by the Defendants in their Brief, that it would be unreasonable for any person to think that he would not be injured while driving with a BAC of more than two times the legal limit (Defendants' Brief , p. 11), is without any factual or statistical support. The United States District Court for the Western District of Iowa, when faced with the question of whether there was substantial evidence to support a denial of a claim for a plan beneficiary who died while driving with a BAC over the legal limit in Iowa, reasoned that:

> "Rather, all *evidence* is to the contrary. Mrs. West has submitted statistics compiled by the Federal Bureau of Investigation concerning alcohol-related offenses, of which the court took judicial notice without objection from Aetna. *See* Plaintiff's Exhibit 1to Trial Brief.[fn8]Those statistics indicate that, for 1996, the year preceding Mr. West's fatal crash, there were 1,033,000

11

> arrests for driving under the influence of alcohol. *See id.* at 1. To the extent that "common knowledge" is helpful in evaluating this evidence, *see Miller,* 953 F. Supp. at 176-77, it should be plain that *not every intoxicated driver is arrested for driving under the influence of alcohol* in any given year, let alone every time he or she is intoxicated. However, for the same year, there were only 42,065 fatalities in motor vehicle crashes, and only 17,218 of those were alcohol related, 40.9% of the total fatalities. Plaintiff's Exhibit 1 to Trial Brief at 2. Although alcohol was a factor in a significant percentage of fatalities, common sense and logic suggest that if it were indeed "highly likely" that a person driving while intoxicated would suffer a serious injury or be killed, the number of alcohol-related fatalities in 1996, in light of the number of arrests for driving under the influence, should have been vastly higher than 17,218. **What "common knowledge" should actually tell a person driving while intoxicated is that he or she is far more likely to be arrested for driving while intoxicated than to die or be injured in an alcohol-related automobile crash, and far more likely to arrive home than to be either arrested, injured, or killed.**

*West v. Aetna Life Ins. Co.,* 171 F. Supp.2d 856, 903-904 (N.D. Iowa, 2001) (bold emphasis added, italics in original). While these statistics are several years old, the Plaintiffs argue that the basic conclusion as set out by the U.S. District Court of Northern Iowa remains the same, that it is not "highly likely" that a person driving while over the influence will actually die as a result of this behavior.

Moreover, the dissenting opinion in *Lennon, supra.* sets out that statistically speaking legally intoxicated motorists arrive safely at their destination without incident more often than not and that of those who do not, the police apprehend and arrest a great many legally intoxicated motorists. "Comparatively, the number of legally intoxicated motorists either injured or killed in crashes linked to alcohol is rather small." *Lennon*, *supra.* at 629. (Clay, J., dissenting).

## **CONCLUSION**

This Court should find that the Defendants clearly abused their discretion in making the determination in this case. For all of the above reasons and those contained in the Plaintiff's

12

Brief in Support of Summary Judgment, the Plaintiffs request that summary judgment be granted in their favor on all of the claims made by the Plaintiffs against the Defendants and that the matter be set down for further hearing on Plaintiffs' claim for attorney fees and costs.

Dated this 25th day of October, 2010.

                Janell Loberg and Russ Loberg, Plaintiffs

By    __s/Daniel P. Bracht_____
       Daniel P. Bracht, # 19501
       Law Offices of Daniel P. Bracht, P.C. L.L.O.
       127 East Walnut Street
       P.O. Box 252
       West Point, NE  68788
       (402) 372-5500
       ATTORNEY FOR THE PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 25, 2010 I electronically filed the foregoing Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment with the Clerk of the Court using CM/ECF system which sent notification of such filing to the Defendants attorney of record Bryan S. Hatch, Stinson Morrison Hecker, L.L.P.

                _s/Daniel P. Bracht_____