IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JANELL M. LOBERG and RUSS LOBERG, | ) ) ) | |
| Plaintiffs, | ) ) | 8:09CV280 |
| v. | ) ) | |
| CIGNA GROUP INSURANCE and LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |
| _____ | ) | |

## I.  INTRODUCTION

This matter is before the Court on the parties cross-motions for summary judgment (Filing Nos. 35 and 38).  Plaintiffs Janell and Russ Loberg ("Lobergs") brought this action after defendants CIGNA Group Insurance and Life Insurance Company of North America (collectively, "LINA") denied a claim for accidental death benefits for the death of the Lobergs' son, Wade Loberg ("Wade").  The case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  After reviewing the brief, evidentiary record, and applicable law, the Court finds the Lobergs' motion should be granted in part and denied in part, and LINA's motion should be granted in part and denied in part.

## II.  BACKGROUND

Janell Loberg was an employee of Valmont Industries, Inc. or one of its related affiliates (Amended Complaint, Filing

No. 30, ¶ 3).  As a Valmont employee, Janell was eligible to participate in Valmont's Group Accident Policy OK 807266 ("Policy") between Valmont and LINA (Administrative Record ("AR"), Filing No. 18, at 79).  Under the Policy, coverage was made available for Janell's spouse and eligible dependents (AR at 89).  Wade Loberg ("Wade"), who was the Lobergs' son, was a dependant of the Loberg under the Policy (*See* Answer to Amended Complaint, Filing No. 32, ¶ 2).  The Policy provided in pertinent part:

> [LINA] agree[s] to pay benefits for loss from bodily injuries:
>
> > a) caused by an *accident* which happens while an insured is covered by this policy; and
> >
> > b) which, directly and from no other cause, resulted in a covered loss.  (See the Description of Coverage.)
>
> [LINA] will not pay benefits if the loss was caused by:
>
> > a) sickness, disease or bodily infirmity; or
> >
> > b) any Exclusion listed in the policy.

(AR a 79 (emphasis added)).  The Policy did not define the meaning of an "accident" (*See* AR at 81).

Early in the morning of September 4, 2008, Wade was driving a 2000 Chevrolet pickup truck southbound on County Road

-2-

7[1] near Wisner, Nebraska, when the vehicle violently crashed, killing Wade (AR at 9, 13).[2]  According to the police report, Wade's vehicle crossed the center line, entered the east roadside ditch, overcorrected, and entered the west roadside ditch sideway (AR at 10).  The vehicle began rolling, and Wade was ejected from the passenger compartment (*Id.*).  The vehicle rolled over Wade before coming to rest upside down (*Id.*).  Wade was pronounced dead at the crash scene (AR at 13).  Wade was the vehicle's only occupant, and nobody else witnessed the crash (*See id.*).

On September 5, 2008, an autopsy of Wade's body was conducted at the Douglas County Morgue (AR at 15).  The autopsy report identified the cause of Wade's death as a "blunt trauma to the head, chest and abdomen, with multiple injuries" (AR at 16).  A forensic toxicology report was also performed on September 5th, which disclosed Wade's blood alcohol concentration ("BAC") at 0.172 g/100mL (or 0.172%) (AR at 14, 22).  On September 22, 2008, Wade's death certificate was issued by the State of Nebraska (AR at 58).  The death certificate stated Wade died as a consequence

---

[1] The record contains a discrepancy regarding the crash's location, sometimes stating it occurred on County Road 6 (*see*, *e.g.*, AR at 58) and sometimes stating it occurred on County Road 7 (*see*, *e.g.*, AR at 9).  The Court finds this discrepancy in the record to be immaterial.

[2] The crash's exact time is unknown, but the police report estimated Wade died approximately three to four hours prior to the trooper's arrival at the crash site 7:45 a.m. (AR at 13).

of a "blunt trauma to the head, chest and abdomen" and of an

"automobile accident" (*Id.*).

The Lobergs submitted a claim for accidental death

benefits under the Policy to LINA on October 3, 2008 (AR 53-55).

After reviewing the claim, LINA denied payment of benefits in a

letter ("Denial Letter") sent to the Lobergs on December 5, 2008

(AR at 3-6).  The Denial Letter summarized the evidence from the

various reports relating to Wade's crash,[3] and specifically noted

that "alcohol involvement was suspected" and that "analysis of

Wade Loberg's blood resultd (sic) in a blood alcohol level of

.172%" (AR at 4).  In summarizing the decision, the Denial Letter

stated:

> [The Policy] only pays benefits for
> loss that was caused by an
> accident.  The Report of Alcohol
> and Drug Analysis for Nebraska
> Traffic Crashes documents that Wade
> Loberg was operating his vehicle
> with a blood alcohol level of
> 0.172%.  Please note that the legal
> blood alcohol limit in Nebraska is
> 0.08%.[4]

---

[3] The Denial Letter states LINA's Accident Specialist
reviewed the following documents in making his determination: (1)
the Lobergs' Proof of Loss Claim Form for Accidental Death
benefits; (2) Wade's State of Nebraska Certificate of Death; (3)
the State of Nebraska Investigator's Motor Vehicle Accident
Report; (4) the Report of Alcohol and Drug Analysis for Nebraska
Traffic Crashes; and (5) the Policy (AR at 4).

[4] *See* Neb. Rev. Stat. § 60-6196 (stating it is unlawful to
operate motor vehicle if under the influence of alcohol or with a
BAC greater than or equal to 0.08 g/100ml).

-4-

> [E]very state in the nation has
> criminalized drunk driving and has
> determined, through the imposition
> of criminal punishment for the
> offense, that the conduct must be
> deterred.  The legislative purpose
> of drunken driving laws is to
> protect the public and guard
> against the threat of injury.  All
> licensed motorists throughout the
> United States are on notice, by
> operation of law, of the state-
> declared prohibitions against drunk
> driving and its consequences.
>
> Therefore, as Wade Loberg would
> have been aware of the risks
> involved in operating his vehicle
> while under the influence, his
> death was not an Accident according
> to the terms of the Policy.
> Therefore, no Accidental Death
> Benefits are payable under [the
> Policy].

(*Id.*).[5]

The Lobergs filed this action on July 10, 2009, in the District Court of Cuming County (Notice of Removal, Filing No. 1,

---

[5] It is unclear from the record whether the Lobergs undertook any form of administrative appeal remedy with LINA.  In its initial Answer (Filing No. 8), LINA set forth as a defense that "[The Lobergs] may have failed to exhaust administrative remedies as to all or part of their claims, and/or as to arguments or evidence that they may seek to introduce here" (Answer, Filing No. 8, Additional Defenses ¶ 2).  However, LINA did not recite this defense in its answer to the amended complaint (*see generally* Answer to Amended Complaint, Filing No. 32), and has not raised the issue in any of its briefing documents.  Therefore, the Court finds the Denial Letter is the final decision of LINA regarding the Lobergs' claim for accidental death benefits.

¶ 1).  Citing 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), LINA
removed the case to this Court on August 18, 2009 (*Id.* ¶ 5).

### III.   CONVERSION OF STATE LAW CLAIMS

In the amended complaint, the Lobergs assert causes of
action for breach of contract (Amended Complaint, Filing No. 30,
¶¶ 13-16), bad faith (*Id.* ¶¶ 17-23), and intentional infliction
of emotional distress ("IIED") (*Id.* ¶¶ 24-26).  In a previous
order in this case (Filing No. 29), the Court noted the Lobergs'
IIED claim was preempted under ERISA because the IIED claim
"ar[o]se[] out of a denial of Ms. Loberg's claim for benefits"
and "related to a plan regulated by ERISA" (Memorandum & Order,
Filing No. 29, at 6, 7 (citing 29 U.S.C. § 1144(a) and *Pilot Life
Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987))).  Regarding the
Lobergs' breach of contract and bad faith claims, the Court finds
ERISA similarly preempts them.

Seemingly recognizing ERISA preempts their state law
claim, the Lobergs' brief supporting their summary judgment
motion states: "[The Lobergs] understand the issue being
submitted on cross motions for summary judgment is whether [LINA]
properly denied [the Lobergs'] claim for accidental death
benefits arising out of the death of their son Wade Loberg"
(Loberg Brief, Filing No. 37, at 1-2).  Under ERISA, a plan
participant may bring a civil action "to recover benefits due to
him under the terms of his plan, to enforce his rights under the

-6-

terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Court agrees with the Lobergs' characterization of the issue in this case and finds the Lobergs' preempted state law claims were converted into a federal claim under § 1132(a)(1)(B). *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) (recognizing Congress intended to make removable to federal court causes of action falling within the scope of § 1132(a)'s civil enforcement provisions); *see also North Dakota Dep't of Human Servs. v. Ctr. for Special Needs Trust Admin., Inc.*, __ F. Supp. 2d __, No. 1:09-CV-077, 2011 WL 37978 (D.N.D. Jan. 6, 2011) ("'Complete preemption can arise when Congress intends that a federal statute preempt a field of law so completely that state law claims are considered to be converted into federal causes of action.'" (quoting *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996))).

## IV.   STANDARDS OF REVIEW

_____Rule 56(c) of the Federal Rule of Civil Procedure provides "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When a case, such as this one, has unresolved issues that are chiefly legal rather than factual, summary

judgment is particularly appropriate.  *Noe v. Henderson*, 456 F.3d 868, 869 (8th Cir. 2006) (per curiam).

        "When an ERISA plan grants the administrator 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' courts review the administrator's benefit decisions for an abuse of that discretion."  *Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  As the Court previously noted, "the Policy appoints LINA as the plan fiduciary for reviewing claims for benefits and grants LINA discretionary authority to interpret the Policy and make benefits determinations" (Memorandum & Order, Filing No. 29, at 4).[6]  Therefore, the Court will apply an abuse of discretion standard of review.

_____

    [6] The Policy provides:

    For plans subject to the Employee Retirement
    Income Security Act (ERISA), the Plan Administrator of
    the Employer's employee welfare benefit plan (the Plan)
    has appointed the Insurance Company as the Plan
    fiduciary under federal law for the review of claims
    for benefits provided by the Policy and for deciding
    appeals of denied claims.  In this role the Insurance
    Company shall have the authority, in its discretion, to
    interpret the terms of the Plan documents, to decide
    questions of eligibility for coverage or benefits under
    the Plan, and to make any related findings of fact.
    All decisions made by the Insurance Company in this
    capacity shall be final and binding on Participants and
    Beneficiaries of The Plan to the full extent permitted
    by law.

(AR at 84).

                                    -8-

In applying the deferential abuse of discretion standard of review, a plan administrator's interpretation of the plan will be upheld if reasonable. *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010). An interpretation should be affirmed "if a reasonable person could have reached a similar decision," even if another also reasonable interpretation could have been made. *Admin. Comm. of Wal-Mart Stores, Inc. v. Gamboa*, 479 F.3d 538, 541-42 (8th Cir. 2007). In reviewing whether the plan administrator's interpretation was reasonable, several factors are relevant to the analysis, "including whether the administrator's interpretation is inconsistent with the Plan's goals, whether it renders language of the plan meaningless, superfluous, or internally inconsistent, whether it conflicts with the substantive or procedural requirements of ERISA, whether it is inconsistent with prior interpretations of the same words, and whether it is contrary to the Plan's clear language." *Jones v. ReliaStar Life Ins. Co.*, 615 F.3d 941, 945 (8th Cir. 2010) (internal quotation marks omitted); *see also Finley v. Special Agents Mut. Benefit Assoc., Inc.*, 957 F.2d 617, 621 (8th Cir. 1992).

In addition to being reasonable, a plan administrator's determination must be supported by substantial evidence in the administrative record. *King v. Hartford Life & Accident Ins. Co.* (*King II*), 414 F.3d 994, 999 (8th Cir. 2005) (en banc).

-9-

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *King*, 414 F.3d at 999 (quoting *Donaho v. FMC Corp.*, 74 F.3d 894, 900 & n.10 (8th Cir. 1996)).

## V.   ANALYSIS

### A.   LINA's Denial of Accidental Death Benefits

The Lobergs seek to recover accidental death benefits LINA denied them after Wade died in the September 4, 2008, crash. In denying the Lobergs' benefits claim, LINA maintained Wade's death was not an "accident" under the Policy.  LINA maintains its interpretation of the Policy was reasonable and supported by substantial evidence.  LINA's brief supporting its summary judgment motion sets forth what LINA believes the Court's responsibility is in resolving the case:  "[The Court's] task is clear:  apply the *Wickman* test to determine whether LINA's denial of accidental death benefits was an abuse of discretion" (LINA's Brief, Filing No. 34, at 10).  The "*Wickman* test" is the standard laid out in *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir. 1990), for determining whether conduct leading to a claim for accidental death benefits was "accidental."  For the reasons set forth below, the Court declines LINA's invitation to apply the *Wickman* standard and will instead return the case to LINA so that it may make an initial

determination, under *Wickman*, as to whether Wade died in an accident.

1.    The *Wickman* Standard

In *Wickman*, the First Circuit was tasked with analyzing, as a matter of first impression, what the definition of an "accident" was under an ERISA governed accidental death and dismemberment insurance policy. *Wickman*, 908 F.2d at 1079. The dispute in *Wickman* arose after the decedent fell from a forty to fifty foot bridge and died from the injuries he sustained. *Id.* at 1080. The defendant insurance company denied accidental death benefits to the policy beneficiary because the insurance company did not believe the decedent's death resulted from an "accident" under the policy.[7] *Id.* at 1081. On appeal, the First Circuit determined the decedent's death was not an accident. *Id.* at 1089.

In determining what constitutes an "accident," the First Circuit created a three-part subjective-objective test. *Id.* at 1088. First, "the reasonable expectations of the insured when the policy was purchased is the proper starting point for a determination of whether an injury was accidental under its terms." *Id.* Second, "[i]f the fact-finder determines that the insured did not expect an injury similar in type or kind to that

_____

[7] The insurance company also denied benefits under the policy's suicide exclusion. *Id.* at 1081.

suffered, the fact-finder must then examine whether the
suppositions which underlay that expectation were reasonable."
*Id.*

> Finally, if the fact-finder, in
> attempting to ascertain the
> insured's actual expectation, finds
> the evidence insufficient to
> accurately determine the insured's
> subjective expectation, the
> fact-finder should then engage in
> an objective analysis of the
> insured's expectations. . . . In
> this analysis, one must ask whether
> a reasonable person, with
> background and characteristics
> similar to the insured, would have
> viewed the injury as *highly likely*
> *to occur* as a result of the
> insured's intentional conduct.

*Id.* (citing *City of Carter Lake v. Aetna Cas. & Surety Co.*, 604
F.2d 1052, 1058-59 & n.4 (8th Cir. 1979)) (emphasis added)
(internal citation omitted).  The *Wickman* standard has become a
cornerstone for cases interpreting whether alcohol-related
automobile crashes constitute accidents.  *See Stamp v. Metro.*
*Life Ins. Co.*, 531 F.3d 84, 89-90 (1st Cir. 2008) (collecting
cases utilizing *Wickman* in cases involving alcohol-related
injuries and deaths); *see also LaAsmar v. Phelps Dodge Corp.*
*Life, Accidental Death & Dismemberment & Dependent Life Ins.*
*Plan*, 605 F.3d 789 (10th Cir. 2010).

-12-

2.   *King v. Hartford Life*: The Eighth Circuit Interprets
the *Wickman* Analysis

In *King v. Hartford Life & Accident Insurance Co.* (*King II*), 414 F.3d 994 (8th Cir. 2005) (en banc), the Eighth Circuit took up the question of whether an alcohol-related motor vehicle crash constituted an accident under an ERISA accidental death benefits policy.  The decedent in *King II*, died after crashing his motorcycle while he was legally intoxicated with a BAC of 0.19%.  *King II*, 414 F.3d at 997.  Prior to the en banc decision, a three-judge panel of the Eighth Circuit had concluded under *Wickman* that the decedent had died in an accident because "a reasonable person in the shoes of the [decedent] would not have viewed the crash and subsequent death as 'highly likely to occur.'"  *King v. Hartford Life & Acc. Ins. Co.*, 357 F.3d 840, 845, 846 (8th Cir. 2004), *vacated*, 414 F.3d 994 (8th Cir. 2005) (en banc) (quoting *Wickman*, 908 F.2d at 1088).  The Eighth Circuit then granted a motion for rehearing en banc and vacated the panel opinion.  *King II*, 414 F.3d at 998.

Upon rehearing en banc, the Eighth Circuit first reviewed the principles of law for reviewing an ERISA plan administrator's denial of benefits.  *Id.* at 998-99.  Specifically of note, reviewing courts "'must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales.'"  *Id.* at

999 (quoting *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999)).  Further, courts should "refuse[] to allow claimants 'to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation.'"  *Id.* (quoting *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998)).

The Eighth Circuit then discussed the different rationales that defendant Hartford had used to justify its denial of accidental death benefits.  *Id.* at 1000-01.  Importantly, Hartford had initially justified its decision in a denial letter to plaintiff that no accidental death benefits were available because "a reasonable person would have known that death or serious injury was a *reasonably foreseeable* result of driving while intoxicated."  *Id.* at 1001 (emphasis added).  The court noted that some cases, *e.g.*, *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1110 (7th Cir. 1998), had utilized a "reasonably foreseeable" standard to evaluate whether an alcohol-related motor vehicle crash was an accident.  *Id.* at 1002.  The court questioned whether a "reasonably foreseeable" standard was the correct method to evaluate whether decedent's crash was an accident.  *Id.*  However, the court determined it was "unnecessary and inappropriate" to resolve that issue because Hartford no longer maintained in the litigation that a "reasonably foreseeable" standard should apply.  *Id.*  Rather, Hartford had changed its stance in litigation and had consistently maintained

-14-

that the *Wickman* "highly likely to occur" standard should be used to define an accident.   *Id.*

Because of the inconsistent standards Hartford had used to justify its denial of benefits, the Eighth Circuit concluded the case fell "in the category where an administrator offers a *post hoc* rationale during litigation to justify a decision reached on different grounds during the administrative process." *Id.* at 1003.   Noting that Hartford effectively conceded it had used the wrong definition of "accident" in denying the benefits claim, the court determined the proper remedy was to return the case to Hartford so that it could reevaluate the claim under what Hartford now maintained was the correct standard:   the *Wickman* "highly likely to occur" standard.   *Id.* at 1005.   According to the court, returning the case to the plan administrator was the "better course generally" than conducting a de novo review under the plan interpretation the administrator offers for the first time litigation.   *Id.*   The Eighth Circuit remanded the case to the district court with instructions to return the case to Hartford to reevaluate the benefits claim under the *Wickman* "highly likely to occur" standard.

The Eighth Circuit's decision in *King II* provides at least two important guidelines for the present case.   First, an ERISA plan administrator cannot offer one rationale for basing its initial determination that an "accident" has not occurred and

-15-

then *post hoc* in litigation attempt to justify its decision under a different rationale. *Id.* at 999. "It is not the court's function *ab initio* to apply the correct standard to the participant's claim," and this type of litigation tactic invites such a scenario. *Id.* at 1005. Rather, the plan administrator, not the Court, is charged with making the initial determination under the applicable standard.

Second, the Eighth Circuit made clear that the *Wickman* "highly likely to occur" standard for defining an "accident" is different from the "reasonably foreseeable" standard. Some courts have not ascribed much of a distinction between what is "reasonably foreseeable" and what is "highly likely to occur." *See*, *e.g.*, *Eckelberry v. Reliastar Life Ins. Co.*, 469 F.3d 340, 344 (4th Cir. 2006) ("Whether the test is one of high likelihood, or reasonable foreseeability, federal courts have found with near universal accord that alcohol-related injuries and deaths are not 'accidental' under insurance contracts governed by ERISA."). The Eighth Circuit's decision in *King II*, however, makes clear that a distinction between the two standards (at least in the Eighth Circuit) exists. *Cf. King II*, 414 F.3d at 1007 n.6 (Bright, J., concurring) ("Hartford [argued in litigation] that 'highly likely' and 'reasonably foreseeable' are the same thing. Obviously they are not."); *McGillivray v. Life Ins. Co. of N. Am.*, 519 F. Supp. 2d 157, 165 (D. Mass. 2007) ("The Eighth

-16-

Circuit has appeared to hold that there is a difference between a 'reasonably forseeable' standard and the *Wickman* test of 'highly likely to occur.'  This can be inferred from the fact that it remanded a case to an administrator who had initially denied the claim because death was 'reasonably forseeable' and then defended the decision in the district court on the ground that the result was 'highly likely to occur.'").

    3.    A *Per Se* Rule That Alcohol-Related Automobile Crashes
           Are Not Accidents is Not Permitted

Setting *Wickman* and *King II* aside briefly, another observation must be made regarding the review of accidental death benefits claims in cases involving people killed or injured while driving under the influence of alcohol:  Plan administrators may not utilize a categorical rule that alcohol-related crashes are not accidents.  Courts have rejected such *per se* rules consistently.  *See LaAsmar*, 605 F.3d at 802 (collecting cases rejecting a *per se* rule that alcohol-related crashes are not accidents).  In the context of these alcohol-related crashes, plan administrators use an impermissible categorical rule when they reject a claim for accidental benefits without expressly stating the crash was foreseeable or highly likely to occur. *Danouvong v. Life Ins. Co. of N. Am.*, 659 F. Supp. 2d 318, 326 (D. Conn. 2009).  When the plan administrator merely notes the decedent's elevated BAC and makes an "*ipse dixit* pronouncement[], without citation to either the record or to authority, that 'the

hazards of driving while intoxicated are widely known and publicized,'" the administrator has improperly used a *per se* rule to deny the benefits claim.   *Id.*

> 4.   LINA's *Post Hoc* Rationale Requires Returning the Case to LINA for a New Determination

In light of the foregoing authorities, the Court must return the case to LINA so that LINA may make a new determination, under the standard it now asserts is correct, as to whether Wade Loberg died in an accident.  As the Eighth Circuit made clear in *King II*, and numerous district courts in this circuit have done recently, when a plan administrator offers one standard to determine that an alcohol-related crash is not an accident, but *post hoc* in litigation asserts a different standard should apply to review the denial decision, returning the case to the administrator to make a determination under the newly offered standard is the proper remedy.  *King II*, 414 F.3d at 1005; *see also Buzzanga v. Life Ins. Co. of N. Am.*, No. 4:09-CV-1353, 2010 WL 5441623, at *8 (E.D. Mo. Dec. 28, 2010) (returning case to plan administrator after the administrator offered a different rationale in litigation for its definition of "accident" than was used when the claim was initially denied); *McClelland v. Life Ins. Co. of N. Am.*, Civil No. 08-4945, 2010 WL 3893695, at *4 (D. Minn. Sept. 30, 2010) (referencing a prior court order remanding the case to the plan administrator after the administrator utilized a different standard in litigation for defining an

-18-

accident); *Blankenship v. Zurich Am. Ins. Co.*, No. 4:08CV604, 2009 WL 775579, at *7 (E.D. Mo. Mar. 20, 2009) (returning the case to the plan administrator to reevaluate the plaintiff's claims under the standard the administrator claimed in litigation was the proper standard).

In this case, LINA has changed positions from its initial rationale regarding the proper standard for assessing whether Wade died in an accident.  In the current litigation, LINA argues that the proper standard for determining whether Wade died in an accident is the *Wickman* "highly likely to occur" standard (*See* LINA's Brief, Filing No. 34, at 10 ("[The Court's] task is clear:  apply the *Wickman* test to determine whether LINA's denial of benefits was an abuse of discretion.").  But, in the Denial Letter, LINA used a different standard to deny accidental death benefits to the Lobergs.  The entirety of LINA's rationale in the Denial Letter was:

> [The Policy] only pays benefits for loss that was caused by an accident.  The Report of Alcohol and Drug Analysis for Nebraska Traffic Crashes documents that Wade Loberg was operating his vehicle with a blood alcohol level of 0.172%.  Please note that the legal blood alcohol limit in Nebraska is 0.08%.
>
> [E]very state in the nation has criminalized drunk driving and has determined, through the imposition of criminal punishment for the offense, that the conduct must be

-19-

> deterred.  The legislative purpose
> of drunken driving laws is to
> protect the public and guard
> against the threat of injury.  All
> licensed motorists throughout the
> United States are on notice, by
> operation of law, of the state-
> declared prohibitions against drunk
> driving and its consequences.
>
> Therefore, as Wade Loberg would
> have been aware of the risks
> involved in operating his vehicle
> while under the influence, his
> death was not an Accident according
> to the terms of the Policy.
> Therefore, no Accidental Death
> Benefits are payable under [the
> Policy].

(AR at 4).  In making its initial determination in the Denial

Letter that Wade did not die in an accident, LINA impermissibly

used a categorical rule that alcohol-related crash death, such as

Wade's, are not accidents.  LINA did not undertake any form of

individualized investigation regarding the circumstances of

Wade's crash.  Rather, once LINA determined Wade's BAC was above

the legal limit, all analysis ceased and LINA categorically

determined Wade had not died in an accident.  Courts have

repeatedly stressed plan administrators may not use such a

categorical rule.  *See LaAsmar*, 605 F.3d at 802 (collecting cases

rejecting a *per se* rule that alcohol-related crashes are not

accidents).

        Because LINA initially used an impermissible

categorical rule to determine that Wade did not die in an

accident,[8] but now *post hoc* offers the *Wickman* standard to
justify its determination, the Court will not determine at this
time whether LINA's determination was reasonable and supported by
substantial evidence.  Rather, returning the case to LINA to make
a new determination under *Wickman* is the proper remedy.  *King II*,
414 F.3d at 1005.  Like the plan administrator in *King II*, LINA
has effectively conceded that it used the wrong standard when it
initially evaluated whether Wade died in an accident.  *Id.*
Because it is not the province of the Court to make an initial
determination under the rationale LINA now offers *post hoc* to
justify its denial of benefits, the Court will return the case to
LINA for it to make an initial determination under *Wickman* as to
whether Wade died in an accident.

　　　　Upon return, LINA must use the *Wickman* "highly likely
to occur" standard to determine whether Wade died in an accident.
LINA should analyze Wade's "subjective expectations and the
reasonableness of the suppositions underlying those expectations"
and analyze "whether a reasonable person, with background

---

　　　　[8]  It could be argued that the Denial Letter indicates LINA
used a "reasonably foreseeable" standard for determining whether
Wade died in an accident.  *See* AR at 4 ("Therefore, as Wade
Loberg *would have been aware of the risks* involved in operating
his vehicle while under the influence, his death was not an
Accident. . . ." (emphasis added)).  Whether this language
denotes a use of a "reasonably foreseeable" standard, however, is
irrelevant because LINA's stance regarding what constitutes an
accident still would have changed from the initial determination
in the Denial Letter to the current litigation.  Therefore,
returning the case to LINA would still be proper.

characteristics similar to [Wade], would have viewed the injury as highly likely to occur as a result of [Wade's] intentional conduct." *McClelland v. Life Ins. Co. of N. Am.*, Civil NO. 08-4945, 2010 WL 3893695, at *8 (D. Minn. Sept. 30, 2010). While Wade's BAC "may be relevant" in showing Wade's "judgment was impaired and that he engaged in behavior that society rightly deems unacceptably risky," it does "not approach evidence that [Wade] intended, expected, or reasonably should have expected, to die." *Id.* at *9. This is not to say that LINA will be incapable of determining that Wade's death was not accidental. However, such a determination must be based on more than Wade's elevated BAC.

## B.   Summary Plan Description

In the amended complaint, the Lobergs' seek additional relief due to an alleged faulty summary plan description LINA provided to them (Amended Complaint, Filing No. 30, ¶¶ 27-32). Specifically, the Lobergs complain of the summary plan description's lack of mention that a violation of a state statute will disqualify or exclude a claim for accidental death benefits. The Lobergs argue this omission constitutes a failure to apprise them of their rights and obligations under the Policy, in violation of 29 U.S.C. § 1022(a). LINA argues that this claim is futile as the Lobergs failed to identify what the proper remedy should be and failed to realize that substantive remedies are not

available generally for a faulty summary plan description, absent a showing of "extraordinary circumstances" (LINA's Brief, Filing No. 34, at 13 (citing *Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007)).

In order to recover for a faulty summary plan description, the Lobergs must show that they were prejudiced by it and that they relied on it to their detriment. *Greeley v. Fairview Health Servs.*, 479 F.3d 612, 614 (8th Cir. 2007). Detrimental reliance occurs when "the plaintiff [takes] action, resulting in some detriment, that he would not have taken had he known that the terms of the plan were otherwise or that he failed, to his detriment, to take action that he would have taken had he known that the terms of the plans were otherwise." *Greeley*, 479 F.3d at 614 (citing *Maxa v. John Alden Life Ins. Co.* 972 F.2d 980, 984 (8th Cir. 1992)). Even assuming without deciding that the summary plan description LINA provided was faulty, the Lobergs have failed to show they detrimentally relied on it. Therefore, this claim fails and must be dismissed.

## VI.  CONCLUSION

The Court finds the case must be returned to LINA so that LINA may determine, under the standard LINA offers *post hoc* in litigation, whether Wade died of an accident, as defined in *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990). Count IV of the Amended Complaint will be dismissed

because the Lobergs have failed to show they detrimentally relied on any defect in the summary plan description LINA provided to them.  Accordingly,

IT IS ORDERED:

1)  The Lobergs' motion for summary judgment (Filing No. 35) is granted in part and denied in part:

> a.  The Lobergs' claim for accidental death benefits in connection with Wade Loberg's death is returned to LINA to evaluate under *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990), whether Wade's death was accidental; and

> b.  The motion is denied in all other respects;

2) LINA's motion for summary judgment (Filing No. 38) is granted in part and denied in part:

> a.  Count IV of the Amended Complaint is dismissed with prejudice; and

> b.  The motion is denied in all other respects.

3) This action is stayed pending the outcome of review of the claim under the standards set forth above.  The parties

-24-

shall file a written status report on or before September 1, 2011, concerning the progress of the evaluation by LINA.

DATED this 10th day of February, 2011.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court

-25-